2026 PA Super 139

| RICHARD E. PENNESI AND MICHELE A. PENNESI, HUSBAND AND WIFE; AND EDWARD J. MAZZONI AND ANN ZOPPETTI, UNMARRIED | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : : : : | No. 452 WDA 2025 |
| v. | : : : : | |
| DL RESOURCES, INC., DWAYNE OVERLY AND ROSEMARY OVERLY, HUSBAND AND WIFE, GARY C. MOORE, CARMELITA MYERS, RONALD D. MALINE, TERRY KING, JOSEPH S. MUCHNOCK AND LISA A. MUCHNOCK, HUSBAND AND WIFE, MICHAEL J. LITTLE AND JILL M. LITTLE, HUSBAND AND WIFE, ROBERT G. SISAK AND LISA A. SISAK, HUSBAND AND WIFE, JOHN B. ZOMISKY, AND BRYAN K. ROBB AND DIANE L. ROBB, HUSBAND AND WIFE. | : : : : : : : : : : : : : : : : : | |

Appeal from the Order Entered March 11, 2025
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  2444 of 2023

BEFORE:  OLSON, J., STABILE, J., and KING, J.

OPINION BY OLSON, J.:                    **FILED: JULY 1, 2026**

Appellants, Richard E. Pennesi and Michele A. Pennesi, husband and

wife, (collectively, "Pennesi") and Edward J. Mazzoni and Ann Zoppetti, an

unmarried couple, (collectively, "Mazzoni") appeal from the March 11, 2025

order entered in the Court of Common Pleas of Westmoreland County that granted summary judgment in favor of, *inter alia*, DL Resources, Inc. ("DL Resources") in the declaratory judgment action brought by Appellants.[1] The March 11, 2025 order also denied Appellants' cross-motion seeking summary judgment in the declaratory judgment action. After careful consideration, we vacate the March 11, 2025 order and remand the case for further proceedings in accordance with our decision.

On June 22, 2023, Appellants filed a complaint for declaratory judgment against the party-defendants seeking, *inter alia*, to enjoin DL Resources from conducting further oil and gas drilling and production operations on the surface of the real property owned by Pennesi. By way of background, Appellants collectively "own a total of 17.58 acres of land in Unity Township, Westmoreland County, Pennsylvania." Appellants' Response to Motion for Summary Judgment and Cross-Motion for Summary Judgment, 1/29/25, at ¶5.[2] Appellants' land "is part of a larger 54[-]acre tract of land (the "Leased

---

[1] The motion for summary judgment filed by DL Resources was joined by the remaining defendants named in the declaratory judgment action, those being Dwayne Overly and Rosemary Overly (husband and wife), Gary C. Moore, Carmelita Myers, Ronald D. Maline, Terry King, Joseph S. Muchnock and Lisa A. Muchnock (husband and wife), Michael J. Little and Jill M. Little (husband and wife), Robert G. Sisak and Lisa A. Sisak (husband and wife), John B. Zomisky ("Zomisky"), and Bryan K. Robb and Diane L. Robb (husband and wife). We refer to DL Resources and the other named-defendants collectively as "the party-defendants."

[2] The trial court adopted, and relied upon, the undisputed facts set forth in Appellants' response to DL Resources' motion for summary judgment and

- 2 -

Premises") which Benjamin John Wells, Jr., William W. Wells, and Carol C. Wells [(collectively, "Wells")] leased to lessee W.H. Haupt Company by [an] oil and gas lease dated August 13, 1959[.]" *Id.* at ¶6. On August 27, 1976, Wells "sold 41.02 [acres] of the Leased Premises[,] including the appurtenant oil and gas rights[,] to Zomisky[.]" *Id.* at ¶8. On March 13, 1982, "Zomisky sold 2 acres of [his] land[,] including the appurtenant oil and gas rights[,] to [Pennesi]." *Id.* at ¶9. On March 13, 1982, "Zomisky [also] sold 2 acres of [his] land[, including the appurtenant oil and gas rights,] to David C. Maffit." *Id.* at ¶¶10, 17. Thereafter, Mazzoni acquired 2 acres of land, including the appurtenant oil and gas rights, from Maffit in 1993. *Id.* at ¶17.

On January 25, 1997, "Zomisky sold 13.58 acres of [his] land to [Michele A. Pennesi (the "Pennesi Deed").]" *Id.* at ¶11. "The Pennesi Deed 'excepted and reserved' to Zomisky the 'oil and gas' rights associated with the [13.58 acres of land sold to Michele A. Pennesi] (the 'Reserved Gas'). However, the Pennesi Deed did not 'except and reserve' unto Zomisky any express right to use the surface of the [13.58-acre tract of land] to produce the Reserved Gas."[3] *Id.* at ¶12. As a result of the prior deed transfers of real property, on

_____

cross-motion for summary judgment filed on January 29, 2025. Trial Court Opinion, 3/11/25, at 2.

[3] Minerals and other sub-surface "materials," such as gas and oil, are corporeal things already in existence and, as such, remain in the possession of the grantor when "excepted" in a conveyance versus incorporeal things, which do not exist at the time of conveyance, remain in the grantor's possession when they are "reserved" within the context of a property transfer. *Ralston v.*

January 25, 1997, "Zomisky continued to own about 20.28 acres of the Leased Premises including the related oil and gas rights." *Id.* at ¶13. At this same time, Zomisky also owned a 13.58-acre oil and gas sub-surface estate located beneath the 13.58-acre surface estate owned by Michele A. Pennesi.

On February 22, 2012, "Michele A. Pennesi conveyed the [13.58-acre surface estate] to [both her and her husband, such that the deed to the surface estate was now titled in both names.]" *Id.* at ¶14. On December 16, 2014, Pennesi sold 6.175 acres [of the 13.58-acre surface estate] to [Mazzoni]." *Id.* at ¶15. This resulted in Pennesi owning "9.405 acres of the Leased Premises consisting of the 2 acres with [the appurtenant] oil and gas rights[,] which Zomisky conveyed in 1982[,] and 7.405 acres of the [13.58-acre surface estate Zomisky sold Michele A. Pennesi in 1997, to which Zomisky excepted to himself the oil and gas rights appurtenant to the land (collectively, the "Pennesi Land").]" *Id.* at ¶16. As a result of the December 16, 2014 transaction, Mazzoni owned "8.175 acres of the Leased Premises consisting of the 2 acre tract [of land] with [the appurtenant] oil and gas rights which Zomisky [first] sold [] in 1982[,] and 6.175 acres of the [13.58-acres surface estate acquired from Pennesi to which Zomisky excepted to himself the oil and gas rights appurtenant to the land (collectively, the "Mazzoni Land").] *Id.* at ¶17.

---

*Ralston*, 55 A.3d 736, 741 (Pa. Super. 2012) (explaining that the terms "exception" and "reservation" are often used interchangeably in deeds).

"By way of various assignments, [DL Resources] succeeded to the interest of [W.H. Haupt Company under the August 13, 1959 oil and gas rights lease.]" *Id.* at ¶19. In 2006, DL Resources "drilled three conventional gas wells[,] known as the William Wells 1, 2, and 3[,] on the surface of the Leased Premises[,] which are covered by [well permits issued by the Pennsylvania Department of Environmental Protection. As of January 29, 2025, DL Resources] continued to operate all three wells to produce gas from the Leased Premises." *Id.* at ¶20. DL Resources "drilled and is currently operating one of those wells, the William Wells 2[,] on the surface of the Pennesi Land." *Id.* at ¶21. Specifically, the well is located on the 7.405-acre portion of the 13.58-acre surface estate in which Zomisky excepted for himself the oil and gas rights. "In connection with its operation of [William Wells 2, DL Resources] maintains a wellhead and related production equipment including roadways, gathering pipelines, and brine tanks on the surface of the Pennesi Land."[4] *Id.* at ¶22.

As part of Appellants' declaratory judgment action, DL Resources "admitted that it [] surrendered the [August 13, 1959 oil and gas rights lease and that the lease] no longer has any force effect." *Id.* at ¶24. "Instead, the only oil and gas lease which currently affects the Leased Premises is an oil and

_____

[4] The focus of the parties' dispute is the access to DL Resources' William Wells 2 which is located on the Pennesi Land. Mazzoni is the owner of the surface estate adjacent to the Pennesi Land and, therefore, is also a plaintiff in the declaratory judgment action. However, there are no allegations that DL Resources utilized the Mazzoni Land to access its oil and gas estate.

gas lease dated March 1, 2023[,] which the [party-defendants, excluding DL Resources,] as lessors[,] made in favor of [DL Resources,] as lessee[.]" *Id.* at ¶25. Neither Pennesi nor Mazzoni joined the March 1, 2023 lease agreement as lessors. *Id.* at ¶26. The March 1, 2023 lease agreement references the same 54-acre tract of land (the Leased Premises) that is the subject of the August 13, 1959 lease and conveys a leasehold interest in the sub-surface oil and gas estate for all but 4 acres of the Leased Premises to DL Resources. *Id.* at ¶27. The March 1, 2023 lease agreement "expressly excludes from the [conveyance] the 4 acres [of land that] Zomisky sold to [Pennesi] and to [Mazzoni, *via* an initial transfer to David C. Maffit,] in 1982." *Id.* at ¶28. The March 1, 2023 lease "does not cover the surface[,] or any other part[,] of the Pennesi [L]and [or the Mazzoni Land] because [Pennesi and Mazzoni] have not joined [the lease] as lessors." *Id.* at ¶29.

The party-defendants, except for Zomisky and DL Resources, filed preliminary objections to Appellants' complaint for declaratory judgment. Zomisky filed his own preliminary objections to Appellants' complaint. In response, Appellants filed an amended complaint.

Following the filing of the amended complaint, additional preliminary objections (which were overruled), and answers and new matter, DL Resources and Zomisky jointly filed a motion for summary judgment which the remaining-defendants joined. In part, the party-defendants argued that DL Resources possessed the right to use the surface of the Pennesi Land at all relevant times. Subsequently, Appellants filed a response to the motion for

summary judgment, as well as a cross-motion for summary judgment. The trial court entertained argument on the competing motions for summary judgment on February 26, 2025. On March 11, 2025, the trial court granted summary judgment in favor of the party-defendants and, in turn, dismissed Appellants' cross-motion for summary judgment with prejudice. In granting summary judgment in favor of the party-defendants, the trial court held that the party-defendants were not required to show that DL Resources' use of the Pennesi Land was strictly necessary but, rather, only that its use was reasonable. Because, in the trial court's view, no genuine issue of material fact existed as to the reasonableness of DL Resources' use of the Pennesi Land, the trial court held that the party-defendants were entitled to judgment as a matter of law. This appeal followed.[5]

Appellants raise the following issue for our review:

> Whether[,] absent an express right to use the surface of land to produce the underlying oil and gas estate, [an] easement to do so may be implied on the basis of mere convenience rather than on its strict necessity [for] production operations?

Appellants' Brief at 4.

Our standard and scope of review of an order granting summary judgment is well-settled.

> A reviewing court may disturb the order of the trial court only where it is established that the [trial] court committed an error of

---

[5] Appellants and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. [*See*] Pa.R.C[iv].P. 1035.2. [Pennsylvania Rule of Civil Procedure 1035.2] states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he[ or she] may not merely rely on his[ or her] pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his[ or her] case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (case citations, ellipses, and quotation marks omitted); *see also Smith v. A.O. Smith Corp.*, 270 A.3d 1185, 1191-1192 (Pa. Super. 2022), *appeal denied*, 283 A.3d 1247 (Pa. 2022).

Here, Appellants assert that DL Resources relinquished its express right to access the Pennesi Land when DL Resources surrendered the August 13, 1959 lease in 2023. Appellants' Brief at 15. Appellants further assert that they were not a party to the March 1, 2023 oil and gas lease and, even if they had agreed to the terms of the new lease, the lease did not provide DL Resources an express right of access to the Pennesi Land. *Id.* Without an express easement, DL Resources, according to Appellants, needed to look to an implied easement in order to validly assert the right to access the Pennesi Land. *Id.* at 16-32. Because DL Resources was unable to establish an implied

- 8 -

easement, Appellants conclude that it was not entitled to access the Pennesi Land. *Id.*

Appellants argue that an implied easement to access land for mining purposes, such as the removal of gas or oil from a sub-surface estate, must be both strictly necessary and subject always to reasonable constraints. *Id.* at 20. Appellants contend that "[t]he 'necessity' requirement is primary and focuses solely on whether – from the perspective of the dominant estate [(the sub-surface estate)] – an easement is strictly necessary." *Id.* at 21. "The 'reasonableness' requirement, on the other hand, is secondary and examines – from the perspective of the servient estate [(the surface estate)] – whether the extent of the exercise of the easement is reasonable."[6] *Id.* "As such, easements are implied on the basis of their 'strict necessity' and not [solely] the 'reasonableness' of their exercise[,]" as the trial court seems to have held. *Id*. Furthermore, reasonableness – as a secondary factor - is "evaluated only after 'strict necessity' has been established." *Id.*

Appellants assert that "an easement to use the surface of the Pennesi Land to produce [] the oil and gas underlying the Leased Premises must be based on strict necessity existing both at the time of [the severance of the dominant estate (the oil and gas estate) from the servient estate (the surface estate) **and** at the time DL Resources attempted to exercise the implied

_____

[6] A "dominant estate" is the sub-surface estate that benefits from the implied easement. The "servient estate" is the surface estate that is burdened by the implied easement.

easement.]" *Id.* at 24-25. Appellants contend that, at the time the oil and gas estate (the dominant estate) was severed from the surface estate (the servient estate), the August 13, 1959 lease was in effect that allowed W.H. Haupt Company, and its successors-in-interest, including DL Resources, to remove the oil and gas from beneath the surface estate by installing a well on **any** portion of the surface estate. *Id.* at 25. As such, according to Appellants, access to the Pennesi Land was not "strictly necessary" for the removal of the oil and gas because, at the time of the severance of the dominant estate (oil and gas estate) from the servient estate (surface estate), the wells and production operations could be located on, and accessed from, any portion of the servient estate pursuant to an express easement granted by Wells to W.H. Haupt Company under the 1959 lease. *Id.* at 26. Appellants further assert that access to the Pennesi Land is not strictly necessary now because, under the March 1, 2023 lease, DL Resources has the express right to access its oil and gas estate by installing wells, and maintaining its production operations, on any portion of the remaining servient estate that is now subject to, and a part of, the March 1, 2023 oil and gas rights lease. *Id.* at 27-29.

Appellants assert that DL Resources provided no evidence that the existence of William Wells 2 and the related production operations on the Pennesi Land was strictly necessary but, rather, simply responded, in discovery, that "the equipment and roadway **necessary** to deliver the gas from the well to market were **reasonably** placed on the Pennesi Land." *Id.* at 31 (emphasis in original). Appellants agree that "the drilling of wells and

- 10 -

the installation of related equipment are 'necessary' to produce oil and gas in the sense that those substances cannot be produced without [the wells and the related equipment]." *Id.* at 31. Employing this standard, Appellants contend, however, that "strict necessity" "requires more than the tautological assertion that gas wells are 'necessary' because oil and gas cannot be produced without [wells]." *Id.* Appellants argue that, to establish strict necessity, DL Resources was required to show that the Pennesi Land (William Wells 2) was the only location where it was "practically possible" for DL Resources to extract resources from its sub-surface oil and gas estate. *Id.* at 32. Appellants contend DL Resources "failed to produce any evidence that [access to] the surface of the Pennesi Land remained 'strictly necessary[.]'" *Id.* at 32.

DL Resources contends that "[t]here is no legal authority to support [Appellants'] position that [DL Resources] can only operate [William Wells 2] on the Pennesi 7.405[-a]cre [p]arcel upon a showing of strict necessity." DL Resources' Brief at 1.[7] DL Resources argues that the only limitation that may be placed on its use of the Pennesi Land "is that such use be reasonable and necessary to transport the [oil and gas] to market." *Id.* DL Resources maintains that Appellants' concept of strict necessity is unsupported by case law. *Id.* at 4-5, *relying on **Belden & Blake Corp. v. Commonwealth, Dept.***

---

[7] The remaining party-defendants, excluding Zomisky, indicated to this Court that they relied upon the trial court's opinion and would not be filing an appellate brief or participating in oral argument. Letter, 9/2/25.

*of Conservation and Nat'l Res.*, 969 A.2d 528 (Pa. 2009).  DL Resources asserts that the trial court's order granting summary judgment in favor of DL Resources and against Appellants should be upheld because Appellants failed to establish that DL Resources' use of the Pennesi Land was unreasonable.  DL Resources' Brief at 5.

The trial court explained its decision to grant summary judgment in favor of DL Resources and against Appellants as follows:

> [DL Resources and Appellants] both seek summary judgment arguing that the law, when applied to the undisputed facts of the case, is in their favor and entitles them to judgment as a matter of law.  They both rely on the same case law in support of their position, but both interpret that case law differently.  The law relied upon states as follows:
>
>> As against the owner of the surface [estate,] each of the several purchasers would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his [or her] underlying estate, and to occupy so much of the surface, beyond the limits of [the] shaft, drift, or well, as might be necessary to operate [the sub-surface] estate, and to remove the product thereof.  This is a right to be exercised with due regard to the owner of the surface [estate,] and its exercise will be restrained, within proper limits, by a court of equity if this becomes necessary; but subject to this limitation it is a right growing out of the contract of sale, the position of the stratum sold, and the impossibility of reaching it in any other manner.
>
> *Belden*[,] 969 A.2d [at] 530[,] *citing* *Chartiers Block Coal Co. v. Mellon*, 25 A. 597, 598 (Pa. [] 1893).  The undisputed facts show that [Zomisky] owns oil and gas rights beneath the surface of the Pennesi and Mazzoni land, including the land on which a wellhead exists.  Based on this undisputed fact, and the holding set forth [*supra*, the trial], court can make the following rulings as a matter of law:

First, this case law makes it clear that the owners of the oil and gas rights beneath the surface of a property do not need an express right to open a way to their underlying estate. Second, there are no qualifications on the right to go on the surface and open a shaft, [drift], or well. As a result, [Appellants] are not entitled to summary judgment on the basis that [DL Resources] lacks an express right to operate a well on the surface of the Pennesi and Mazzoni land[8], because no express right is required[. DL Resources] is entitled to summary judgment regarding [Appellants'] claim for relief as set forth in [their amended complaint] because case law supports [DL Resources'] right as a matter of law to open a well on the surface of the land.

Third, the case law also makes it clear that the owners of the oil and gas rights beneath the surface of the property do not need an express right to occupy the surface, beyond the limits of their shaft, drift, or well, as might be necessary to operate their estate, and to remove the product from their estate. Therefore, [Appellants] are not entitled to summary judgment based on the fact that none of the [party-defendants] had an express right to operate on the surface of the Pennesi and Mazzoni land, as the law makes it clear that they do not need an express right to do so. However, the case law does place qualifications on this right. The use of the surface beyond the shaft, drift, or well is limited to that which is necessary and with due regard to the surface owner. "What is necessary and reasonable may be determined by reference to what is customary, and is a question of fact." *Oberly v. H.C. Frick Coke Co.*, 104 A. 864 (Pa. [] 1918).

[Appellants] do not claim that any particular use of the Pennesi and Mazzoni land beyond the well was and continues to be unreasonable or unnecessary, and they do not ask [the trial] court for such a declaration. Instead, [Appellants] argue that the applicable standard is one of strict necessity because the case law states that the right of access is one "growing out of the impossibility of reaching the oil and gas in any other manner." *Belden*[,] 969 A.2d [at] 530[,] *citing* *Chartiers Block Coal*[,] 25 A. [at] 598[. Appellants] argue that it is not impossible for [DL Resources] to reach the oil and gas by any other manner, as they

---

[8] As previously noted, the gravamen of Appellants' declaratory judgment action is that DL Resources has no right of access over the Pennesi Land in order to access William Wells 2. **See** *supra* at p. 5, n. 4.

pooled the gas rights and can access [the oil and gas sub-surface estate] from other locations not on the Pennesi and Mazzoni land, and therefore[, the party-defendants] fail to satisfy the strict necessity requirement.

However, [the trial] court does not agree with [Appellants'] interpretation of the law and does not view the language relied upon by [Appellants] as imposing a strict necessity requirement. This would be contrary to the remaining language set forth in the case law, and the holding of the **Belden** Court. In fact, the **Belden** Court states that[] "**Chartiers** holds that the exercise of a subsurface owner's rights must be reasonable[." **Belden**, 969 A.2d] at 532. [The holding in **Chartiers**] does not state that it must be strictly necessary, and the **Belden** Court does not analyze the rights of the parties before it through a strict necessity standard. In **Belden**, a surface owner contended that it was permitted to impose conditions on the party exercising their subsurface rights, and the **Belden** Court reasoned that allowing such conditions "would place the burden on the sub[-]surface owner to seek judicial redress when **Chartiers** clearly places the burden on the surface owner to seek legal redress to prevent or restrain the sub[-]surface owner['s] exercise of its rights." [**Id.**] If [the trial] court required [DL Resources] to establish strict necessity, then that would also place the burden on the sub[-]surface owner and would be contrary to the standard set forth in **Chartiers** and **Belden**.

Based on the application of the law, [the trial] court could only place limitations on [DL Resources'] use of the surface [estate] if that use were unreasonable, and therefore, [the trial] court cannot permanently enjoin [DL Resources] from conducting any further drilling or production operations on the surface of the Pennesi and Mazzoni land, and it cannot award [Appellants] damages for [interference] with their right to use and enjoy their land, as the law permits the owner of the oil and gas [rights] to interfere with their use as long as doing so is reasonable. Therefore, [Appellants] are not entitled to summary judgment as a matter of law because the relief requested does not comport with the law relied upon by both parties, and [DL Resources] is entitled to summary judgment on all remaining requests for relief set forth in [Appellants'] amended complaint.

Trial Court Opinion, 3/11/25, at 5-8 (formatting modified; extraneous capitalization, ellipsis, and original brackets omitted).

At common law, a person who owned the surface of the land, "owned all that grew upon it[,] all that was buried beneath it" to the "center of the earth[,]" and the space above it extending "upward to the clouds."[9] *Chartiers*, 25 A. at 598.[10] As the sciences of geology and mineralogy evolved, so too did the understanding that the "land" consisted of different layers or stratum comprised of such things as soil, oil, gas, coal, and water. With this scientific enlightenment came advancement in the law governing ownership of "land." *Id.* (stating, "This may be called the 'expansive property of the common law.' [Sub-surface rights] are peculiar, and exist from necessity, and the necessity must be recognized, and the rights of [sub-surface] and [surface] landowners adjusted and protected accordingly."). A fee simple owner of the "land" could, for example, retain ownership rights to the surface

---

[9] This doctrine, commonly known as the *ad coelum* doctrine, is derived from the Latin maxim "*cujus est solum ejus est usque ad coelum et ad infernos*," which generally translates as "whoever owns the soil, it is theirs up to the sky and down to hell."

[10] The **Belden** Court remarked that "**Chartiers** remains the seminal case setting forth a sub[-]surface owner's rights with respect to the surface owner's rights." **Belden**, 969 A.2d at 532 n.6. Recently, our Supreme Court confirmed its continued reliance on the jurisprudence set forth in **Belden** and, by implication, **Chartiers**. **PBS Coal v. Dept. of Transp.**, 244 A.3d 386, 407 n.13 (Pa. 2021) (reiterating the principal that an owner of a dominant sub-surface estate has the right to access the estate *via* the servient surface estate provided that the exercise of that right is reasonable).

estate (the soil stratum) for purpose of settlement and cultivation while transferring property rights to the various other estates or strata, *i.e.*, the coal, oil, and gas estates, to different fee simple owners or lessees.[11]  ***Id.***

---

[11] "Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support." ***Miller v. Bunting***, 335 A.3d 733, 744 (Pa. Super. 2025) (citations omitted).  We note that the term "mineral" is often used generally to refer to many of the organic and inorganic substances found below a surface estate.  By definition, a mineral must be inorganic, homogeneous in structure, have a definite chemical composition, and have a known crystallization.  BLACK'S LAW DICTIONARY 897 (5th ed. 1979).  Examples would include quartz, gold, silver, copper, and diamond.  Coal, by scientific definition, is not a mineral but, rather, is an organic, sedimentary rock which results from the compacting of plant matter.  Natural gas and oil also are not minerals "because they are not of a metallic nature, as the common person would understand minerals." ***Butler v. Charles Powers Est. ex rel. Warren***, 65 A.3d 885, 898 (Pa. 2013).  Under the rule established by our Supreme Court in ***Dunham v. Kirkpatrick***, 101 Pa. 36 (1882) (commonly referred to as "the ***Dunham*** Rule"), there exists "a rebuttable presumption in the context of a private deed conveyance that the term 'mineral' does not include oil or gas." ***Butler***, 65 A.3d at 897.  Thus, encompassed within the definition of a "mineral estate," as considered within a discussion of the three discrete estates in land, are true mineral estates, *i.e.*, a copper estate or a gold estate, as well as non-mineral estates, such as a coal estate, a gas estate, or an oil estate. ***Hetrick v. Apollo Gas Co.***, 608 A.2d 1074, 1077 (Pa. Super. 1992) (stating, "the Pennsylvania rule permitting severance of the mineral estate for coal and other solid minerals applies with equal force to oil and gas"); ***see also Bastian v. Sullivan***, 117 A.3d 338, 344 (Pa. Super. 2015) (noting that the three discrete estates in land are more properly referred to as the surface estate, the mineral **or** sub-subsurface estate, and the right to subjacent (surface) support).  As such, in the conveyance of, or exception of, a "mineral estate," the grantor must be specific in that which is being conveyed or excepted to avoid confusion.  In the case *sub judice*, the parties agree, and the record supports, that, on August 27, 1976, Wells conveyed to Zomisky 41.02 acres of surface land (including appurtenant oil and gas rights), which included the 13.58 acres of surface land currently owned by Pennesi (7.405 acres) and Mazzoni (6.175 acres) that is at the center of the declaratory judgment action.

(explaining, "the surface of the land may be separated from the different strata underneath it, and there may be as many different owners as there are strata"); *see also Shawville Coal Co. v. Menard*, 421 A.2d 1099, 1103 (Pa. Super. 1980) (stating, "there may be many different owners of the minerals underlying a tract").  "The difficulty is to so apply the law as to give each owner the right of enjoyment of his [or her] property or strata without impinging upon the right of other owners, where the owner of the surface [estate] neglected to guard his [or her] own rights in the deed by which he [or she] granted the lower strata to other owners." *Chartiers*, 25 A. at 598; *see also Bartkowski v. Ramondo*, 219 A.3d 1083, 1095 (Pa. 2019) (reiterating that "[a]ll property owners are presumptively entitled to the quiet use and enjoyment of their entire properties; such rights are inherent to our understanding of property ownership").

As the *Chartiers* Court explained,

> As against the owner of the surface [estate], each of the several purchasers would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his [or her] underlying estate, and to occupy so much of the surface beyond the limits of [the] shaft, drift, or well, as might be necessary to operate [the sub-surface] estate, and to remove the product thereof.  This is a right to be exercised with due regard to the owner of the surface [estate], and its exercise will be restrained within proper limits by a court of equity, if this becomes necessary; but, subject to this limitation, it is a right growing out of the contract of sale, the position of the stratum sold, and the impossibility of reaching it in any other manner.

***Chartiers***, 25 A. at 598. "The grantee has the right to use and occupy [the surface estate] while engaged in the removal of the [sub-surface materials, *i.e.*, oil, gas, or coal,] for the reason that such use is essential to the enjoyment of the grant." ***Id.*** at 599; ***see also Baker v. Pittsburg, Carnegie & Western R.R. Co.***, 68 A. 1014, 1015 (Pa. 1908) (stating, "A grant of minerals implies the right to win them from the underlying soil. The use of some portion of the surface [estate] is necessary for the proper enjoyment of this right."); ***Belden***, 969 A.2d at 532 (stating, "'[o]ne who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the [surface estate], so far as it is necessary to carry on mining operations'" (ellipsis omitted) (*relying on* ***Turner v. Reynolds***, 23 Pa. 199, 206 (1854)); ***Humberston v. Chevron U.S.A., Inc.***, 75 A.3d 504, 511 (Pa. Super. 2013) (stating, "one who has the right to remove sub[-]surface minerals, also has the right to enter onto the surface [estate] to make reasonable use of a portion of the surface [estate] to retrieve his [or her] property"). "[If rights to materials located in a sub-surface estate] are excepted in a lease, conveyance, or other instrument without any express mention of working powers, then the law implies or confers all such powers as are reasonably sufficient to enable the [person with rights to the sub-surface estate] to dig and carry away the minerals[ - ]namely, a power to enter upon the surface, [dig pits, get the minerals,] and for a limited period[,] deposit them on the surface." ***Baker***, 68 A. at 1016, *citing* JOHN HENRY COCKBURN, THE LAW OF COAL, COAL MINING, AND THE COAL TRADE AND OF THE

HOLDING, WORKING, AND TRADING WITH MINERALS GENERALLY 117-118 (1902).  In simplest terms, absent an express right-of-way, the law implies a right-of-way by necessity for the benefit of the sub-surface owner to access his or her estate. ***Id.***

> The three fundamental requirements for an easement [or right-of-way] by necessity to arise are the following:
>
> 1) The titles to the alleged dominant and servient [estates] must have been held by one person.
>
> 2) This unity of title must have been severed by a conveyance of one of the tracts [or estates].
>
> 3) The easement must be necessary in order for the owner of the dominant [estate] to use[*, i.e.*, access,] his [or her sub-surface estate], with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

***Phillippi v. Knotter***, 748 A.2d 757, 760 (Pa. Super. 2000) (citation omitted), *appeal denied*, 760 A.2d 855 (Pa. 2000); ***see also Bartkowski***, 219 A.3d at 1092; ***Youst v. Keck's Food Serv. Inc.***, 94 A.3d 1057, 1075 (Pa. Super. 2014).  An implied right-of-way by necessity "contemplates a situation in which a parcel of land [or estate] is landlocked" and access "cannot be had except by passing over [another's estate]."[12] ***Phillippi***, 748 A.2d at 760; ***see***

---

[12] We recognize that, while an implied right-of-way by necessity "contemplates," and is often relied upon in, a case involving a parcel of land or estate that is landlocked, a finding of an implied right-of-way by necessity is not limited only to those situations in which the parcel of land or estate is landlocked or surrounded by other surface estates. ***See Bartkowski***, 219 A.3d at 1093 (explaining that, because the term "strict necessity" does not require a showing of "utter impossibility," the property owner's entitlement to

*also Bartkowski*, 219 A.2d at 1092 (stating, "[an implied] right[-]of[-]way [by necessity] never exists when [an individual] can get to his [or her] own property through his [or her] own land" (citation and original quotation marks omitted)).

An implied right-of-way by necessity does not contemplate a 'necessity' that is absolute or indefinite, nor without limit. Foremost, an implied right-of-way by necessity "is always of **strict necessity**" and "never exists as a mere matter of convenience." *Phillippi*, 748 A.2d at 760 (emphasis in original; citations omitted); *see also Bartkowski*, 219 A.3d at 1092 (stating, "[w]e have long[-]recognized that [an implied] right[-]of[-]way [by] necessity over the land of another is always of strict necessity" (original quotation marks and ellipsis omitted) (*citing* **Ogden v. Grove**, 38 Pa. 487, 491 (1861)). Our Supreme Court, in *Bartkowski*, *supra*, recently defined further the term "strict necessity" within the context of an implied easement or right-of-way by necessity. As the *Bartkowski* Court noted, "the concept of strict necessity always is contrasted with the notion of convenience." *Bartkowski*, 219 A.3d at 1092. In defining the term "strict necessity," the *Bartkowski* Court explained that, "[w]ithout question, these two concepts - strict necessity and mere convenience - sit at opposite ends of a continuum that encompasses a significant amount of gray area." *Id.* at 1093. "There is no formulaic or

_____

an implied right-of-way or easement by necessity is not limited to circumstances in which the parcel of land or estate is completely surrounded and landlocked by other properties or estates).

canonical standard that constitutes 'strict necessity,' leaving each case to turn on its facts." *Id.* The *Bartkowski* Court reasoned that "[t]o require a party to prove utter impossibility of alternative access is to stretch 'strict necessity' beyond its intended meaning." *Id.* "Where it is manifestly impracticable, even though theoretically possible, to create ingress and egress [to] one's [estate], the [dominant estate] may establish that [an implied] right[-]of[-]way over [the servient estate] is 'strictly necessary' in the legal sense." *Id.* at 1094. Thus, in order to acquire an implied right-of-way by necessity, the dominant estate is not required to establish that access to the estate is **absolutely impossible** by all means other than a grant of an implied right-of-way by necessity. *Id.* at 1093 (stating "literal impossibility of alternative access is an unworkable standard"). However, it is insufficient for the dominant estate to simply show that an implied right-of-way by necessity exists because it is the most convenient and least expensive means of access. *Id.* (stating, "neither is it sufficient merely to show that the legally available [alternative] route would be inconvenient or expensive").

In determining whether an implied right-of-way by necessity is "strictly necessary," the *Bartkowski* Court advised that, while "[t]he expense of constructing alternative access may be one of many relevant factors in determining whether access across a [servient estate] is 'strictly necessary[,]' . . . the cost or difficulty of constructing alternative access may not always, or even often, be sufficient by itself to warrant burdening [the servient estate.]" *Id.* at 1094 (stating, "there may be a tipping point at which it becomes

manifestly unreasonable to require a party to expend a disproportionate amount of money in order to access [an estate]").

> The central inquiry is whether, absent the recognition of an [implied right-of-way by necessity], the proposed dominant estate will be left without a means of ingress and egress, rendering the [estate] inaccessible and, thus, unusable. A [trial] court must evaluate the asserted necessity by assessing whether this untenable outcome will result in practice, not merely by asking whether some remote alternative is hypothetically possible in the abstract. Each case will require individualized consideration of multiple factors, including, but not limited to: the existence of zoning restrictions and the likelihood that the party can obtain the necessary variances or exceptions; the existence of state or federal regulations that prohibit certain uses of the [estate] in question; the topography of the [estate] and the practicability of constructing alternative access; the environmental consequences of construction; the costs involved; and, of course, whether and to what extent these impediments existed at the time of severance. This list of factors is non-exclusive, as future cases may well present additional circumstances relevant to the establishment of [strict] necessity.

*Id.* at 1096 (footnote omitted). "The burden to establish [strict] necessity for [the grant of] an [implied right-of-way by necessity] across the [servient estate] falls squarely upon [] the shoulders of the party seeking it." *Id.* at 1095.

As such, an implied right-of-way by necessity to use a surface estate located immediately above a sub-surface estate cannot be found when the owner of the sub-surface estate has readily available access to his or her sub-surface estate through practical means other than *via* the surface estate located immediately above the sub-surface estate, such as through the use of adjoining estates to which the owner of the sub-surface estate has an express

right of access. In this instance, the owner of the sub-surface estate is not entitled to an implied right-of-way by necessity across the surface estate even if access *via* the surface estate is the least expensive or most convenient. ***Friedline v. Hoffman***, 115 A. 845, 846 (Pa. 1922) (stating that where the owner of the sub-surface estate has a practicable way over his or her own lands for the removal of the minerals contained in the estate, "the law cannot allow [the sub-surface owner an implied] right[-]of[-]way by necessity"); ***see also Blackburn v. Youghiogheny & Ohio Coal Co. of Pennsylvania***, 168 A. 351, 353 (Pa. Super. 1933); ***Bartkowski***, 219 A.3d at 1093.

An implied right-of-way by necessity ceases once all of the minerals or materials contained in the sub-surface estate have been removed or if the mining or removal efforts are abandoned. ***Westerman v. Pennsylvania Salt Mfg. Co.***, 103 A. 539, 541 (Pa. 1918); ***see also Phillippi***, 748 A.2d at 760. In other words, once all the minerals have been extracted, or the sub-surface estate is abandoned, the implied right-of-way by necessity ceases because there is no longer a necessity for the sub-surface owner to have a right-of-way across the surface estate.

The owner of the sub-surface estate has an implied right-of-way by necessity to access the minerals, as well as the space left by the removal of the minerals, until the sub-surface estate is terminated by exhaustion of the minerals or by abandonment of the sub-surface estate. ***Lillibridge v. Lackawanna Coal Co.***, 22 A. 1035, 1038 (Pa. 1891); ***see also Kormuth v. United States Steel Co.***, 109 A.2d 907, 909 (Pa. 1954) (stating, the owner

of the sub-surface estate "is entitled to the possession of the [minerals] and also of the space made by [their] removal). The owner of the sub-surface estate may use the space left by the removal of minerals under the servient surface estate to remove minerals from adjoining sub-surface estates to which the owner of the sub-surface estate has a right of possession. *Lillibridge*, 22 A. at 1038; *see also Shawville Coal Co.*, 421 A.2d at 1104 n.4 (explaining that "since [an owner of the sub-surface estate] owns the [minerals comprising the estate] and[,] in essence[,] the space occupied by the [minerals] while they are being mined, [the sub-surface owner] may use that space as he [or she] wishes as it becomes available" through mining efforts). In other words, when an owner has two or more adjoining sub-surface estates, the owner of the sub-surface estates may access one sub-surface estate by means of a shaft, drift, or well and use the passageway created as a result of the mining efforts to remove materials from an adjoining sub-surface estate. The owner of the sub-surface estate may not, however, increase "the burden upon the servitude on the surface by bringing the minerals from the [adjoining sub-surface estate] over the surface" of the servient surface estate, absent an express right to do so. *Lillibridge*, 22 A. at 1038; *see also Shawville Coal Co.*, 421 A.2d at 1104 n.4 (stating that, "additional use of the surface [estate] beyond that needed to mine the [minerals] under the [surface estate] imposes an encumbrance that will not be implied unless explicitly made a part of the agreement between the parties).

Thus, if an owner acquires property rights to a sub-surface estate comprised of minerals or other materials, such as oil or gas, then the owner of the sub-surface estate, absent an express right-of-way, has an implied right-of-way based upon strict necessity to access the minerals or other materials beneath the surface estate through use of the servient surface estate unless the owner of the dominant sub-surface estate can access the sub-surface estate through another surface estate for which he or she has an express right-of-way. If the owner of the dominant sub-surface estate has an implied right-of-way by necessity to come upon the servient surface estate, that right permits the owner of the sub-surface estate to access the minerals by installing, for example, a shaft, drift, or well. The owner of the sub-surface estate may reasonably burden the servient surface estate in a way necessary to permit the removal of the minerals from the sub-surface estate. The owner of the sub-surface estate may also use the space created in the sub-surface estate by the removal of the minerals as a conduit for removing and transporting minerals from the owner's adjoining sub-surface estates. The owner of the sub-surface estate may not, however, burden the servient surface estate with the removal of minerals mined from an adjoining sub-surface estate without an express grant of wheelage rights.[13]

---

[13] The right to burden the servient surface estate with the removal of minerals mined from an adjoining sub-surface estate is commonly referred to as "wheelage" rights and must be expressly conveyed as a separate right in a property conveyance. *Shawville Coal Co.*, 421 A.2d at 1103 n.3 (explaining

With these principals in mind, we turn to the case *sub judice*. It is undisputed, and the record supports, that on August 27, 1976, Zomisky acquired 41.02 acres that included both a conveyance of the surface estate, as well as the sub-surface estates, including, *inter alia*, the oil and gas estate. On March 13, 1982, Zomisky subdivided the 41.02-acre surface estate and conveyed two 2-acre surface estates, those being the 2-acre surface estates currently owned by Pennesi and Mazzoni. In these March 1982 conveyances, Zomisky did not except for himself the oil and gas estates located beneath these two 2-acre surface estates. In January 25, 1997, Zomisky further subdivided his remaining surface estate and conveyed a 13.58-acre surface estate to Michele Pennesi. The 13.58-acre surface estate was subsequently subdivided by Pennesi into a 7.405-acre surface estate, currently owned by Pennesi, and a 6.175-acre surface estate, currently owned by Mazzoni. In the January 1997 deed, Zomisky excepted for himself the oil and gas estate located under the 13.58-acre surface estate. The remainder of Zomisky's surface estate, that being a 23.44-acre surface estate (41.02 acres less the two 2-acre conveyances and the 13.58-acre conveyance equals 23.44 acres) is now owned in some proportion by the party-defendants (excluding DL

---

that a "wheelage" right is "a right to transport [minerals] from an adjoining tract" across a servient surface estate). Because the owner of an adjoining sub-surface estate would have an implied right-of-way by necessity to access the sub-surface estate *via* the adjoining surface estate, a wheelage right to burden the surface estate cannot be implied out of strict necessity but, rather, must be expressly granted. **Shawville Coal Co.**, 421 A.2d at 1104 n.4.

Resources) with the oil and gas estate located under the 23.44-acre surface estate being excepted to the benefit of those party-defendants.[14]  On March 1, 2023, the party-defendants, including Zomisky, leased their interests in the oil and gas estate to DL Resources.  The oil and gas estate that is the subject of the March 1, 2023 lease agreement is comprised of that portion of the original oil and gas estate, acquired by Zomisky in 1976, less the two 2-acre oil and gas estates that were conveyed to Pennesi and Mazzoni.  In other words, the oil and gas estate that is the subject of the March 1, 2023 lease agreement is a 37.02-acre oil and gas estate.

The trial court, in granting summary judgment in favor of DL Resources and, in turn, denying Appellants' cross-motion for summary judgment, held that "owners of oil and gas rights beneath the surface of a property do not need an express right to open a way to their underlying estate."  Trial Court Opinion, 3/11/25, at 5.  We concur with the trial court that an express right-of-way is not the only means by which an owner of a sub-surface estate may obtain access to his or her estate.  The trial court, however, went on to state that "there are no qualifications on the right to go on the surface and open a shaft, [drift], or well."  *Id.* at 6.  We cannot agree, and the trial court erred as a matter of law, that the right to utilize the surface estate for the purpose of accessing the sub-surface estate does not come with certain

_____

[14] The majority of the 23.44-acre oil and gas estate is excepted to the benefit of Zomisky.  Zomisky did not, however, except the oil and gas estate in all of the conveyances surrounding the subdivision of the 23.44-acre surface estate.

qualifiers. An owner of a sub-surface estate may gain access to the sub-surface estate *via* an express right-of-way or, as explained *supra*, *via* an implied right-of-way by necessity in the event that an express right-of-way cannot be obtained. When an owner of a sub-surface estate has an express right-of-way to cross-over the surface estate, the agreement granting the right-of-way controls the particulars of what the owner of the sub-surface estate can, and cannot, do in terms of utilizing the surface estate. ***See Bito Bucks in Potter, Inc. v. Nat'l Fuel Gas Supply Corp.***, 449 A.2d 652, 653 (Pa. Super. 1982) (stating, "the same rules of construction apply to deeds granting easements as to contracts generally"). For example, the agreement may define the path by which the owner of the sub-surface estate must travel or the location where the shaft, drift, or well must be located. Absent an express right-of-way, the owner of the sub-surface estate may acquire an implied right-of-way by necessity by demonstrating that use of the surface estate is **strictly necessary** to gain access to the sub-surface estate and that use must be necessary and reasonable as to the burden imposed on the servient surface estate. Thus, the qualifier of strict necessity must be satisfied before an implied right-of-way by necessity can be found to exist. ***See Chartiers***, 25 A. at 598; ***see also Baker***, 68 A. at 1015; ***Phillippi***, 748 A.2d at 760; ***Belden***, 969 A.2d at 532. Once strict necessity is established and an implied right-of-way by necessity is granted, the use of that implied right-of-way must be reasonable.

Pursuant to the March 1, 2023 lease, DL Resources has an express right-of-way to enter upon 23.44 acres of the 37.02-acre surface estate for the purpose of installing a shaft, drift, or well to gain access to, and use of, its oil and gas estate.[15] Currently, DL Resources has two wells, William Wells 1 and William Wells 3, which are located on the 23.44-acre surface estate. If DL Resources is able to access all of its 37.02-acre oil and gas estate through use of William Wells 1 or William Wells 3, then the use of William Wells 2 on the Pennesi Land is not strictly necessary. *See Lillibridge*, 22 A. at 1038; *see also Shawville Coal Co.*, 421 A.2d at 1104 n.4.; *Bartkowski*, 219 A.3d at 1094. If, however, it can be established that William Wells 2 is required out of strict necessity to permit DL Resources to access the 13.58-acre portion of its oil and gas estate which lies beneath the corresponding 13.58-acre surface estate, then a right-of-way by necessity will be implied under *Lillibridge*, *Chartiers*, and their progeny so DL Resources may access its 13.58-acre oil and gas estate *via* use of William Wells 2.

In its motion for summary judgment, DL Resources had the burden, as the moving party, to establish that no genuine issue of material fact existed as to the strict necessity of the existence, and use, of William Wells 2 so DL Resources may access its 13.58-acre oil and gas estate located under the

---

[15] Because Pennesi and Mazzoni were not parties to the March 2023 lease, DL Resources did not obtain an express right-of-way to access the two 2-acre surface estates, as well as the 7.405-acre and 6.175-acre surface estates owned by Pennesi and Mazzoni, respectively.

surface estates owned by Pennesi and Mazzoni. In viewing the record in the light most favorable to Appellants as the non-moving party, we cannot concur with the trial court that DL Resources satisfied its burden and was entitled to a grant of summary judgment.[16] A genuine issue of material fact exists as to whether, or not, William Wells 2 was strictly necessary for DL Resources to access its 13.58-acre oil and gas estate at the time of the severance and at the time of the exercise of the implied right-of-way by necessity.[17] This is a fact intensive inquiry, not yet undertaken by the parties and the trial court, that will require careful scrutiny of the inexhaustive list of factors identified *supra*. Therefore, we find that the trial court erred as a matter of law and abused its discretion in granting summary judgment in favor of DL Resources

---

[16] To establish an implied right-of-way by necessity, DL Resources was required to establish, *inter alia*, that, at the time of the severance of the dominant estate from the servient estate, and at the time DL Resources sought to exercise the implied right-of-way by necessity on the servient estate to extract resources from its oil and gas estate (**see Phillippi**, 748 A.2d at 760), its use of the servient estate was strictly necessary. **Chartiers**, 25 A. at 598; **see also Phillippi**, 748 A.2d at 760; **Bartowski**, 219 A.3d at 1092. If the implied right-of-way by necessity is strictly necessary, then exercise of that right-of-way must be reasonable.

[17] For purpose of this litigation, the severance of the dominant estate (DL Resources' oil and gas estate) from the servient estate (the Pennesi Land) occurred on January 25, 1997, when Zomisky conveyed the 13.58-acre surface estate (servient estate) to Michele A. Pennesi and retained the appurtenant oil and gas rights but without an express easement to use the 13.58-acre surface estate (servient estate) to extract resources from the oil and gas estate (dominant estate). DL Resources sought to exercise an implied right-of-way by necessity in 2006 when it drilled William Wells 2 on the Pennesi Land.

and against Appellants.[18]  Consequently, we vacate the March 11, 2025 order and remand this case for further proceedings in accord with this decision.

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/1/2026

_____

[18] Because a genuine issue of material fact exists as to whether, or not, William Wells 2 was strictly necessary for DL Resources to access its 13.58-acre oil and gas estate, we do not address whether, or not, DL Resources established that its current use of the Pennesi Land was reasonable.  **See Baker**, 68 A. at 1016.